IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff,<br>v.<br><br>SAVAGE RIVER LODGE, LLC and LITTLE CROSSINGS, LLC d/b/a FRONTERRA RESOURCES,<br><br>       Defendants. | CIVIL ACTION NO. 1:23-cv-02510<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (ADA), as amended, and Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and pregnancy and to provide appropriate relief to Charging Party Jessica Cook. Defendants violated the ADA and Title VII when they discriminated against Charging Party because of disability and/or pregnancy and when they retaliated against her.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action also is instituted pursuant to Section 706(f)(1) and (3)

1

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

2. Plaintiff, the Equal Employment Opportunity Commission (the Commission or EEOC), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and Title VII.

3. At all relevant times, Defendant Savage River Lodge, LLC, a Maryland corporation, has continuously been doing business in Frostburg, Maryland, and has continuously had at least 15 employees.

4. At all relevant times, Defendant Little Crossings, LLC d/b/a Fronterra Resources, a Maryland corporation, has continuously been doing business in Frostburg, Maryland, and has continuously had at least 15 employees.

5. At all relevant times, each Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h), and Section 101(5) and (7) of the ADA, 42 U.S.C.§§ 12111(5) and (7).

6. At all relevant times, each Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Charging Party Jessica Cook filed a charge with the Commission alleging violations of the ADA and Title VII by Defendants.

8. On April 12, 2023, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII and the ADA were violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On July 18, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Defendant Savage River Lodge, LLC (Savage River Lodge) is a corporation that operates the Savage River Lodge offering hospitality services in Frostburg, Maryland. Savage River Lodge employs all persons who work at the lodge.

12. Defendant Little Crossings, LLC d/b/a Fronterra Resources (Fronterra) operates the Savage River Lodge and is an employer of persons who work there.

13. Fronterra operates the Cornucopia Café, Grant's Mercantile, and Little Crossings Pantry in Grantsville, Maryland, and is an employer of persons who work there.

14. Savage River Lodge and Fronterra are owned and managed by the same persons, share a CEO, CFO, Director of Operations, and other management, share employees, and otherwise are integrated and/or function as a single employer or joint employers.

15. At all times material, the Director of Operations who managed personnel at Savage River Lodge was Emily Newman-Edwards.

16. Savage River Lodge employed Charging Party, as defined by the ADA and Title VII.

17. Fronterra employed Charging Party, as defined by the ADA and Title VII.

18. Charging Party is disabled as defined by the ADA because she has impairments that substantially limit major life activities, she has a record of such impairments, and/or she was regarded as having them.

19. Charging Party has impairments including but not limited to endometriosis and those impairments substantially limit major life activities and/or major bodily functions such as reproductive function and normal cell growth.

20. Charging Party also had a qualifying impairment when her pregnancy, which already was high-risk because of her disabilities, was further complicated by a blood clot that formed on the fetal sac.

21. Charging Party worked for Defendants as a Guest Services Representative (GSR) at the Savage River Lodge beginning on October 3, 2019.

22. The Savage River Lodge maintains cabins and yurts for rent and operates a restaurant for lodge guests. Staff working at the lodge include GSRs, restaurant servers and cooks, housekeepers, and marketing personnel.

23. During Charging Party's employment, she was supervised or managed by the Director of Operations, Emily Newman-Edwards.

24. Other supervisors/managers who exercised supervisory authority over Charging Party and other employees at the Savage River Lodge were Reyna Fajardo-Escobar and Defendants' owners.

25. Reyna Fajardo-Escobar also exercised supervisory authority over persons who worked at the Savage River Lodge as housekeepers.

26. As a GSR, Ms. Cook's essential job functions were to communicate with guests by phone or email, assist guests with reservations, and provide concierge services to guests (such as providing information about the lodge site and conveying their needs to Savage River Lodge and other lodge personnel).

27. During Charging Party's employment, the Director of Operations, Emily Newman-Edwards became aware that Charging Party has impairments that constitute disabilities under the ADA, and that she has a record of such impairments.

28. During her employment, Emily Newman-Edwards became aware that Charging Party was undergoing IVF treatment and needed periodic time off for such treatment and related medical care.

29. In mid-November 2019, Charging Party became pregnant and advised management of her pregnancy.

30. Charging Party needed periodic time off for pregnancy-related medical care.

31. Charging Party obtained permission to occasionally be absent from the workplace for shifts she was scheduled or asked to work.

32. It was reasonable to grant Charging Party periodic time off for pregnancy-related medical care.

33. Granting Charging Party periodic time off for pregnancy-related medical care was not an undue hardship.

34. During Charging Party's employment, Emily Newman-Edwards believed it was reasonable to grant periodic time off to persons who needed medical care or time off for reasons related to pregnancy and/or pregnancy-related conditions.

35. During her employment, Charging Party performed some housekeeping-related or guest-preparation duties such as checking cabins prior to guest arrivals, laundering towels and sheets, making beds, and generally cleaning spaces for guests before their arrival.

36. During Charging Party's employment, Emily Newman-Edwards became aware that Charging Party should take steps to reduce strenuous activities because of her pregnancy and/or pregnancy-related conditions.

37. Charging Party told Emily Newman-Edwards that her physician/treater told her to reduce strenuous activities at work because of her pregnancy and/or pregnancy related conditions and/or that she wanted to reduce strenuous activities at work for those reasons.

38. Charging Party sought modification of work duties and/or work schedules with the goal of reducing or eliminating housekeeping-related duties, especially those that involved bending, lifting, climbing, or traveling outside in cold or icy conditions, such as checking cabins prior to guest arrivals, laundering towels and sheets, making beds, and generally cleaning spaces for guests before their arrival.

39. During Charging Party's employment, Emily Newman-Edwards believed it was reasonable to modify work duties and/or work schedules if such modifications were necessary to accommodate a person's pregnancy and/or pregnancy-related condition.

40. Because of Charging Party's pregnancy and/or pregnancy-related conditions, it was reasonable to reduce or eliminate her housekeeping-related duties, especially those that involved bending, lifting, climbing, or traveling outside in cold or icy conditions, such as checking cabins prior to guest arrivals, laundering towels and sheets, making beds, and generally cleaning spaces for guests before their arrival.

41. It was not an undue hardship to reduce or eliminate Charging Party's housekeeping-related duties, especially those that involved bending, lifting, climbing, or traveling outside in cold or icy conditions, such as checking cabins prior to guest arrivals, laundering towels and sheets, making beds, and generally cleaning spaces for guests before their arrival.

42. On or about December 4, Charging Party started bleeding heavily due to pregnancy complications.

43. Charging Party advised management of her condition described in Paragraph 42.

44. Between November 1, 2019 and December 24, 2019, Charging Party was not advised that she should no longer perform housekeeping-related duties, especially those that involved bending, lifting, climbing, or traveling outside in cold or icy conditions, such as checking cabins prior to guest arrivals, laundering towels and sheets, making beds, and generally cleaning spaces for guests before their arrival.

45. On December 24, Charging Party had painful cramps and experienced significant bleeding.

46. Charging Party worked and completed her shift on December 24, 2019, as scheduled.

47. Charging Party was not scheduled or expected to work on December 25, 2019 or December 26, 2019.

48. Charging Party's next scheduled shift was on December 27, 2019.

49. On December 26, 2019, Charging Party advised management that she was bleeding and/or suspected she was having a miscarriage.

50. On December 27, 2019, Charging Party advised Emily Newman-Edwards and Defendants' owner, Jan Russell, that she had a miscarriage and could not come to work that day.

51. On December 27, 2019, Emily Newman-Edwards sent Charging Party a message through Defendants' internal messaging system and that message stated, in part, that it seemed like Charging Party would be out for the "foreseeable future" and that the company was willing to "amicably part ways" if Charging Party did not want to return to work.

52. Reyna Fajardo-Escobar was available to work the shift that Charging Party was scheduled to work on December 27, 2019.

53. Savage River Lodge did not require Reyna Fajardo-Escobar to work the shift that Charging Party was scheduled to work on December 27, 2019, or otherwise granted Escobar permission not to work that day.

54. In response to the message described in Paragraph 51, Charging Party replied to Emily Newman-Edwards through the internal messaging system and her reply stated, in part, that Charging Party did "not intend to quit."

55. Charging Party's reply that is described in Paragraph 54 and that stated, in part, that she did "not intend to quit" was read by Emily Newman-Edwards before Charging Party was separated from her employment at the Savage River Lodge.

56. Before Charging Party was separated from her employment at Savage River Lodge, Charging Party sent Emily Newman-Edwards a message through the internal messaging system and her message stated, in part, that she intended to have a memorial for her baby on Sunday, December 29, and to meet with her doctor on Tuesday, December 31 to be medically cleared to return to work.

8

57. Charging Party's message that is described in Paragraph 56 was read by Emily Newman-Edwards before Charging Party was separated from her employment at the Savage River Lodge.

58. Emily Newman-Edwards did not speak to Charging Party in-person or by telephone or by video or remote transmission after December 24, 2019 and before the date Charging Party was separated from her employment at Savage River Lodge.

59. Charging Party did not submit a letter of resignation.

60. On December 28, 2019, Emily Newman-Edwards sent Charging Party a message through Defendants' internal messaging system, and the message stated, in part, that the company may need to fill her position immediately, that Newman-Edwards did not know whether staff could fill in, and that she would get back to Charging Party.

61. In the message described in Paragraph 60, Emily Newman-Edwards did not ask Charging Party to contact her or to provide any information including a medical release, doctor's note, or any information regarding her medical condition.

62. In the message described in Paragraph 60, Emily Newman-Edwards did not ask Charging Party to contact her or to provide a date when she anticipated being able to return to work at Savage River Lodge.

63. On December 29, 2019, Charging Party's access to the Savage River Lodge internal messaging system, 7Shifts, was blocked, removed, or modified, such that she could no longer send or receive messages through the system or otherwise access information in the system.

64. On December 29, 2019, Emily Newman-Edwards sent a message to staff through Defendants' internal messaging system stating, in part, that Charging Party was no longer employed at Savage River Lodge.

65. Effective December 29, 2019, Charging Party was separated from her employment at the Savage River Lodge.

66. Charging Party filed a Charge of Discrimination with the United States Equal Employment Opportunity (U.S. EEOC) regarding her employment at the Savage River Lodge.

67. Emily Newman-Edwards communicated with the U.S. EEOC on behalf of the Savage River Lodge regarding the Charge of Discrimination that Charging Party filed.

68. Emily Newman-Edwards had authority to communicate with the U.S. EEOC on behalf of the Savage River Lodge regarding the Charge of Discrimination that Charging Party filed.

69. Emily Newman-Edwards submitted to the U.S. EEOC a document entitled "Position Statement Charge 531-2020-02933" that set forth the position of the Savage River Lodge regarding the Charge of Discrimination filed by the Charging Party.

70. Emily Newman-Edwards had authority to submit to the U.S. EEOC the document entitled "Position Statement Charge 531-2020-02933" on behalf of the Savage River Lodge regarding the Charge of Discrimination filed by the Charging Party.

71. The "Position Statement" that Emily Newman-Edwards submitted to the U.S. EEOC contained statements regarding Charging Party's employment and separation.

72. The statements contained in the "Position Statement" that Emily Newman-Edwards submitted to the U.S. EEOC regarding Charging Party's employment and separation are true statements.

73. In the "Position Statement" that Emily Newman-Edwards submitted to the U.S. EEOC regarding Charging Party's employment and separation, Edwards stated, in part, "Jessica Cook was ultimately terminated due to her violation of our attendance policy."

74. In the "Position Statement" that Emily Newman-Edwards submitted to the U.S. EEOC regarding Charging Party's employment and separation, Edwards stated, in part, "Jessica [Cook] was terminated by me[.]"

75. In the "Position Statement" that Emily Newman-Edwards submitted to the U.S. EEOC regarding Charging Party's employment and separation, Edwards stated, in part, that she terminated Jessica Cook on December 29.

76. Savage River Lodge alleges that it ultimately terminated Charging Party due to her alleged violation of its attendance policy.

77. Charging Party was terminated by Emily Newman-Edwards.

78. Charging Party was terminated by Emily Newman-Edwards on December 29, 2019.

79. Charging Party received her last paycheck from Savage River Lodge in January, 2020.

80. After Savage River Lodge sent Charging Party her last paycheck and before the date Savage River Lodge learned or was advised that Charging Party filed a Charge of Discrimination with the U.S. EEOC, Emily Newman-Edwards did not send Charging Party any emails, text messages, direct message, or letters, nor did she call Charging Party on the telephone, attempt to communicate with her by video or other remote transmission, or attempt to reach her in-person.

81. After Savage River Lodge sent Charging Party her last paycheck and before the date Savage River Lodge learned or was advised that Charging Party filed a Charge of Discrimination with the U.S. EEOC, Savage River Lodge did not offer to hire or rehire Charging Party for any position, nor did they offer to employ or pay her wages in exchange for any work whatsoever.

82. After Savage River Lodge sent Charging Party her last paycheck and before the date Savage River Lodge learned or was advised that Charging Party filed a Charge of Discrimination with the U.S. EEOC, Savage River Lodge hired persons to work at the Savage River Lodge in various positions, including the position that Charging Party held.

83. After Savage River Lodge sent Charging Party her last paycheck and before the date Savage River Lodge learned or was advised that Charging Party filed a Charge of Discrimination with the U.S. EEOC, Savage River Lodge hired persons to work at the Savage River Lodge in positions for which Charging Party was qualified.

84. After Charging Party was separated from her employment at Savage River Lodge, Savage River Lodge hired persons to work in the GSR position and Savage River Lodge paid those persons a higher hourly wage than they paid to Charging Party during her employment.

85. After Charging Party was separated from her employment at Savage River Lodge, Reyna Fajardo-Escobar was separated from her employment at Savage River Lodge.

86. Savage River Lodge hired persons to replace Reyna Fajardo-Escobar but did not offer that position to Charging Party nor notify her of the opportunity to apply or be considered for it.

## COUNT I/ADA VIOLATIONS
### Discrimination and Retaliation

87. At all relevant times, Charging Party was a person who is protected under the ADA from discrimination and retaliation.

88. Charging Party was qualified for the position she held at Savage River Lodge, with or without accommodations.

89. Savage River Lodge was on notice that Charging Party needed reasonable accommodations concerning housekeeping-related duties. Reasonable accommodations included eliminating or reducing housekeeping duties, schedule changes, shift swaps, and/or other modifications.

90. Charging Party requested leave from December 27, 2019 through and including December 31, 2019.

91. Savage River Lodge did not grant Charging Party leave for any days between December 27, 2019 through and including December 31, 2019.

92. Savage River Lodge failed to provide reasonable accommodations to Charging Party regarding housekeeping-related duties.

93. Savage River Lodge failed to provide Charging Party with leave as an accommodation.

94. Savage River Lodge failed to engage in an interactive process to identify reasonable accommodations or failed to do so in good faith.

95. Savage River Lodge terminated Charging Party because of disability, including because of the need to provide accommodations at the time of her termination or in the future.

96. Charging Party engaged in protected activity, as defined by the ADA, including engaging in opposition and/or exercising her rights under the statute including requesting accommodations.

97. Charging Party engaged in protected activity, as defined by the ADA, by filing a Charge of Discrimination with the U.S. EEOC or otherwise engaging in activity defined as "participation" under the Act.

98. Savage River Lodge took materially adverse action against Charging Party because she engaged in protected activity.

99. The reason Savage River Lodge asserts for its conduct is a pretext.

100. Defendants violated the ADA, as amended, as described above and herein, by engaging in prohibited conduct, including taking adverse employment action against Charging Party because of disability (because she is disabled, has a record of disability, or because they regarded her as disabled); depriving her of benefits and privileges granted to non-disabled employees; failing to engage in the interactive process and to otherwise fulfill duties and obligations imposed on employers by the Act; denying her accommodations; retaliating against her; terminating her and failing to return her to employment, with or without accommodations (failure to hire/rehire).

<u>COUNT II/TITLE VII VIOLATIONS</u>
<u>Discrimination and Retaliation</u>

101. Charging Party is a person protected by Title VII, as amended, because she was pregnant and had pregnancy-related conditions.

102. Charging Party was qualified for the position she held at the Savage River Lodge.

103. Savage River Lodge failed to provide Charging Party with the same privileges and benefits of employment that they provided to persons who were not pregnant or were not

affected by pregnancy-related conditions and who were similar in their ability or inability to work, including granting leave, providing other modifications such as permitting shift swaps or using existing staff to fill in due to absence or anticipated absence, excusing absences, offering time off, and otherwise making modifications to ensure that employees could retain their employment notwithstanding attendance and/or performance deficiencies.

104. Charging Party requested leave from December 27, 2019 through and including December 31, 2019.

105. Savage River Lodge did not grant Charging Party leave for any days between December 27, 2019 through and including December 31, 2019.

106. Savage River Lodge took adverse employment action against Charging Party because of pregnancy and/or pregnancy-related conditions.

107. Charging Party's pregnancy and pregnancy-related conditions were a but-for cause of her discharge.

108. Charging Party engaged in protected activity, as defined by Title VII, by filing a Charge of Discrimination with the U.S. EEOC or otherwise engaging in activity defined as "participation" under the Act.

109. Savage River Lodge took materially adverse action against Charging Party because she engaged in protected activity.

110. The reason Savage River Lodge asserts for its conduct is a pretext.

111. Defendants violated Title VII, as amended, by engaging in discrimination and retaliation when they took adverse employment action and/or materially adverse action against Charging Party because of pregnancy and/or protected activity, including depriving her of benefits enjoyed by persons not affected by pregnancy or pregnancy-related conditions, as

described above; denying her leave; terminating her, and failing to return her to employment (failure to hire/rehire).

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from discriminating against persons because of disability and pregnancy and from engaging in unlawful retaliation.

B. Prohibit Defendants from engaging in attendance and leave practices that discriminate because of disability or pregnancy, including policies that limit absences, penalize employees or subject them to adverse action because of alleged absenteeism, and otherwise engage in practices that infringe on rights secured under the ADA and Title VII.

C. Order Defendants to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by the ADA and Title VII and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

D. Order Defendants to make whole Charging Party by providing to her appropriate backpay with prejudgment interest, in amounts to be determined at trial, including interim raises and wage/salary opportunities that would have been availability to her but for the discrimination and/or retaliation, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

   E. Order Defendants to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

   F. Order Defendants to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

   G. Order Defendants to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

   H. Grant such further relief as the Court deems necessary and proper in the public interest.

   I. Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel


s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney

s/Emily Datnoff
EMILY DATNOFF, Bar No. 29464
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
31 Hopkins Plaza, 14th Floor
Baltimore, Maryland 21201
Emily.Datnoff@eeoc.gov
Phone: (410) 801-6708
Fax: (443) 992-7880